Isaac McConihe Respondent, *v.* Francis A. Fales et al.,
Appellants.

A defense to the foreclosure of a purchase-money real estate mortgage on
the part of the mortgagor, alleged to have existed at the time of its
inception, can only arise where fraud has been practiced by the mortgagee
in procuring its execution, or there is a failure of consideration.
Where, therefore, the purchaser is in the undisturbed possession of the
land he cannot, in the absence of fraud, resist the foreclosure of such a
mortgage on the ground simply of defect of title.
A purchaser of the mortgaged premises, who takes a deed subject to the
mortgage, is estopped from contesting the consideration or validity of the
mortgage; and, so long as he remains in possession of the premises, cannot
defend against the mortgage because of failure of title.
The members of the firm of McD., K. & Co., purchased, for the purposes of
the firm business, certain real estate which was conveyed to the individ-
ual members and thereafter used by the firm. McD. died intestate, and
his interest in the real estate was sold by order of the surrogate to pay his
individual debts, the purchaser conveyed said interest to E. who sold and
conveyed the same to C., taking the bond of the latter, secured by mort-
gage on the interest purchased to secure a portion of the purchase-money.
E. also caused to be conveyed to C. a third interest in the firm business, the
latter covenanting to pay all the existing debts of the firm. C., with the
surviving partners, formed a copartnership to carry on the business, and
used and occupied the said real estate. The new firm having become
insolvent, made a general assignment for the benefit of creditors, which
included the said real estate. The assignees sold and conveyed the same
to F., subject to all liens and incumbrances. F. took and retained
possession. In an action to foreclose the mortgage so given by C. it did
not appear that there were any debts of the old firm outstanding or exist-
ing at the time of the conveyance to him. *Held,* that neither C. nor F.
or his grantees had any legal or equitable defense to the mortgage; that
E. at the time of his conveyance to C. had an interest in the property
capable of being transferred by deed, which furnished a sufficient con-
sideration for the bond and mortgage, and that the same was a valid and
subsisting lien at the time of the conveyance to F.; that no equities existed
in favor of creditors giving the assignees power to question the lien of
the mortgage ; but even if there were, as they did not, and did not trans-
fer any right to do so, but sold subject to existing liens, their grantee
and those succeeding to his interests acquired no such right.

(Argued October 24, 1887; decided November 29, 1887.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made June 29, 1885, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

This action was brought to foreclose a mortgage executed by defendant Clark. The facts are sufficiently set forth in the opinion.

*E. F. Bullard* for appellants. The machinery had been put upon the real estate for manufacturing purposes, and as such became a part of the real estate. (*McRae* v. *Cent. Bk.*, 66 N. Y. 489.) In equity partnership real estate is considered personal property. (Story on Part. § 92, note 2 ; *Delmonico* v. *Guillaume*, 2 Edw. Ch. 366 ; *Tarbell* v. *West*, 86 N. Y. 290.) One party cannot convey or mortgage any share of the firm property or create any liens on the *corpus.* (*Menagh* v. *Whitwell*, 52 N. Y. 146, 154 ; *Cooper's Appeal*, 29 Penn. 156 ; *Savage* v. *Putnam*, 32 N. Y. 501 ; *Tarbell* v. *West*, 86 id. 287.) The real estate in question was partnership property. (*Field* v. *Fairchild*, 64 N. Y. 471 ; Lindley on Part. 667 ; Story on Part. § 92, note 2 ; *Smith* v. *Danvers*, 6 Sandf. 669.) The partners, as such, can sell the firm property and give a perfect title, notwithstanding one partner may have given a mortgage upon his share. (*Tarbell* v. *West*, 86 N. Y. 289 ; *Staats* v. *Bristow*, 73 id. 364 ; *Case of Bowas*, 11 N. H. 404.) The assignees and Fales as a purchaser under them represented all of the creditors. (Laws of 1858, chap. 314 ; *Sands* v. *Hildreth*, 14 Johns. 493 ; 15 Wend. 588 ; 18 id. 375 ; 3 Barb. Ch. 613 ; *Southard* v. *Benner*, 72 N. Y. 424.) The property described in the mortgage as real estate, being partnership property, was to be treated as personal property for the purpose of paying partnership debts and adjusting the equities between the partners, and what remained was to be treated as real property. (*Tarbel* v. *Bradley*, 86 N. Y. 280, 288 ; 7 Abb. [N. C.] 273 ; *Menagh* v. *Whitwell*, 52 N. Y. 146, 158 ; *Buchan* v. *Sumner*, 2 Barb. Ch. 167 ; *Hiscock* v. *Phelps*, 49 N. Y. 97 ; *Tarbell* v. *West*, 86 id. 287 ; *Murray* v. *Mumford*,

7 Cow. 441; *Delmonico* v. *Guillaume*, 2 Sandf. Ch. 366; 86
N. Y. 290.) Conceding that the defendants did not acquire
the full title to all of the real estate under the purchase from
the assignees, and that some lien yet remained in favor of the
plaintiff, then it became the duty of the referee to determine
the defendant's equities which were prior to the plaintiffs,
so that the purchaser would know what he was buying.
(*Wetmore* v. *Roberts*, 10 How. 51; 17 N. Y. 88; *R. R. Co.*
v. *Swazy*, 23 Wall. 407; *Sutherland* v. *L. S. R. R. Co.*, 9
B'k Reg. 298, 305; *Green* v. *Putnam*, 1 Barb. 500; *Ford* v.
*Knapp*, 102 N. Y. 135; *Town* v. *Medham*, 3 Paige, 553;
2 Story Eq. § 1237; *Clute* v. *Emmerich*, 99 N. Y. 342.)
Partners are jointly liable to third parties for all of the debts.
As between themselves, they are sureties that the others shall
pay their proper share. (*Clark* v. *Mackin*, 95 N. Y. 346;
*Havens* v. *Willis*, 100 id. 482; *Acer* v. *Hotchkiss*, 97 id. 395;
*Shamburgh* v. *Abbott*, 5 East. Rep. 862; *Gans* v. *Thieme*,
93 N. Y. 225; *Perry* v. *Bd. of Missions*, 102 id. 99; *Clute* v.
*Emmerich*, 99 id. 346; *Lovejoy* v. *Bowers*, 11 N. H. 405;
*Lewis* v. *Hawkins*, 23 Wallace, 120.)

*Charles E. Patterson* and *Orin Gambell* for respondent.
This real estate, as between the partners, was not partnership
property. (*Hiscock* v. *Phelps*, 49 N. Y. 97.) The real
estate having been conveyed to the individual members who
composed the first firm of McDonnell, Kline & Co., they held
it at all times as individual property, and the moment the firm
debts were paid and there was no claim on the part of a
copartner for advances, the title was clear, and either copartner
could convey his interest; and the moment the debts of the
firm, which were outstanding at the time of John McDonnell's
death, were paid, the title of McDonnell's interest at once
became vested in his heirs, and could never thereafter be
invested with a personal character. (*Fairchild* v. *Fairchild*,
64 N. Y. 471.) A purchaser from one member of a firm of
his interest, acquires no title to any share of the partnership
effects, but only to the assignor's share of the surplus after

an accounting and an adjustment of the partnership affairs, except in the case of a *bona fide* purchaser for value of land, without notice that it is partnership assets. (*Menagh* v. *Whitwell*, 52 N. Y. 158; *Tarbell* v. *West*, 86 id. 286.) This mortgage having been given for the purchase-price of property which was put into or used by the partnership, neither a partner nor a creditor has any equity to hold such property as partnership property, applicable to the payment of firm debts, until the seller who parted with his title is paid the purchase-price for such property. (*Garson* v. *Green*, 1 Johns. Ch. 308; *Dubois* v. *Hull*, 43 Barb. 26–30; *Ellis* v. *Harriman*, 90 N. Y. 467.) So long as that assignment remains unimpeached, the assignees are the only parties, if any there be, who can now question the validity of the lien of this mortgage. (*Spring* v. *Short*, 90 N. Y. 538, 544, 545; *Lowery* v. *Clinton*, 32 Hun, 267; *Childs* v. *Kendall*, 30 id. 227.) The widow and son of John McDonnell having taken or purchased his interest in the partnership of McDonnell, Kline & Co., and they and the survivors of the old firm having assumed and agreed to pay the debts of the old firm, the new firm became in equity the principal debtors, and the estate of John McDonnell only the surety; and the creditors having accepted credit of the new firm or firms succeeding the surety, remain wholly discharged, and thus the real estate covered by this mortgage became released from all claims of the creditors. (*Colgrove* v. *Tallman*, 67 N. Y. 95; *Morse* v. *Gleason*, 64 id. 204.; *Savage* v *Putnam*, 32 id. 501; *Bilborough* v. *Holmes*, 22 Eng. R. 67, 69; *Luddington* v. *Bull*, 77 N. Y. 138.)

Ruger, Ch. J.   In considering this case it is desirable to keep in view some of the elementary principles, bearing upon the questions involved, and which seem to us to be decisive of the merits of this appeal.

A defense to the foreclosure of a purchase-money mortgage on the part of the mortgagor, alleged to have existed at the time of its inception, can only arise when fraud has been practised by the mortgagee in procuring its execution, or there

is a failure of consideration. Thus it is held that a purchaser of land who has given a bond and mortgage thereon to secure the purchase-money, and is in the undisturbed possession thereof, cannot resist the foreclosure of the mortgage on the mere ground of a defect of title, there being no allegation of fraud in the sale, nor eviction. (*Abbott* v. *Allen*, 2 Johns. Ch. 520; *York* v. *Allen*, 30 N. Y. 104.) In such case he is remitted for relief, if any he has, to the covenants contained in his deed, and if there are no such covenants he is remediless. (*Banks* v. *Walker*, 2 Sandf. Ch. 344; *Parkinson* v. *Sherman*, 74 N. Y. 88; *Frost* v. *Raymond*, 2 Caines', 188; *Leggett* v. *McCarthy*, 3 Edw. Ch. 124; *Edwards* v. *Bodine*, 26 Wend. 109.) "The rule (says Mr. Justice Swayne, in *Peters* v. *Bowman*, 98 U. S. 56), is founded in reason and justice. A different result would subvert the contract of the parties and substitute for it one which they did not make. In such cases the vendor, by his covenants, if there are such, agrees upon them, and not otherwise, to be responsible for defects of title. If there are no covenants, he assumes no responsibility, and the other party takes the risk. The vendee agrees to pay according to his contract, and secures payment by giving a lien upon the property."

A purchaser of mortgaged premises who takes a deed thereof subject to the mortgage, and agrees to pay the same, is estopped from contesting the consideration or validity of the mortgage, and when the mortgage is given by his grantor to secure the purchase-money, such grantee cannot, so long as he remains in possession of the premises, defend against the mortgage because of failure of title. (*Parkinson* v. *Sherman*, *supra*; *Ryerson* v. *Willis*, 81 N. Y. 277.) The mortgagee's title cannot be questioned in defense of a bill for foreclosure. If he takes by virtue of his mortgage any estate whatever which is still subsisting, he is entitled to a decree and the court will not inquire what interest he has in the mortgaged estate. (Jones on Mort. § 1492.) The mortgage sought to be foreclosed in this action was given by Augustus Clark to Edward McDonnell in August, 1880, to secure the purchase-price of

the mortgaged real estate conveyed by the mortgagee to the mortgagor at the same date. The property consisted of the real estate pertaining to a manufacturing establishment in the city of Amsterdam, and McDonnell's deed purported to convey an undivided third part of such estate to Clark, who, thereupon, took possession of such property, and, having become a member of the firm, continued to possess and enjoy it in common with the other owners, until December 3, 1883, when the whole property was transferred by Clark and his copartner to certain assignees for the benefit of their copartnership creditors. The property was, in March, 1884, sold and conveyed to the defendant Fales by the assignees, subject to all liens and incumbrances existing against it, and Fales subsequently entered into a written contract to sell and convey it to the defendant Consalus.

The defendants, Clark, Fales and wife, and Consalus, interposed answers to the complaint and defended the action, but judgment having been rendered for the plaintiff upon the trial, the defendant Clark dropped out of the controversy, and appeals from the judgment were taken by Fales and wife and Consalus alone.

The defendant Fales claims title to the property through Clark, and, inasmuch as. he took it with full notice of all of the facts which then affected it, he, of course, took no greater or different interest than that possessed by his grantor. All claims set up in the several answers founded upon charges of fraud or misrepresentation by McDonnell, the mortgagee, upon Clark, the purchaser, at the time of the execution of the deed and mortgage, have been disposed of by the findings of the referee and no longer remain in the case as questions to be considered upon this appeal. The question here to be considered consists solely of that arising under the first count of the defendant Fales' answer. The allegations of this count are as follows: " That on or about August 14, 1880, Perry Kline, Thomas Harvey and Lucy McDonnell were partners doing business at Amsterdam, N. Y., under the firm name of McDonnell, Kline & Co.; that as such partners they then

owned and occupied the real estate described in the complaint, which had been purchased and paid for with the partnership funds of said firm and its predecessors; that at that time the legal title of one undivided third part of said real estate was nominally vested in one Edward McDonnell for the benefit of Lucy McDonnell; that at that time the said firm owed a large amount of debts exceeding $100,000, and their firm property at that time was not worth sufficient to pay the amount of such indebtedness, and said firm was in fact then insolvent; that said debts were equitable liens upon all of the partnership property then owned by said firm, including the real estate in question; that on or about said 14th day of August 1880, said Edward McDonnell agreed to sell his interest in said real estate, and the interest which the said Lucy McDonnell had owned in said firm property, to the defendant, Augustus Clark, for the consideration of $20,500, to be paid by said Clark to the said Edward McDonnell therefor, but the sale to be subject to the payment by said Clark of one-third of the partnership debts aforesaid; that in pursuance of said agreement said Edward McDonnell acquired the interest of said Lucy McDonnell in said firm property subject to the payment of the firm debts, and then and there conveyed and transferred such interest to the defendant Clark, who thereupon paid toward the purchase-price $10,500, and to secure the balance gave the mortgage mentioned in the complaint in this action." The answer then proceeds to state that Clark thereupon became a partner in said business with Kline and Harvey, and that subsequently, in 1882, Harvey sold out his interest to Clark and Kline, who continued the business until December, 1883, when, being insolvent, they made a general assignment of all their property to assignees for the benefit of their creditors; that on or about March, 1884, said assignees sold and conveyed said real estate, with other partnership property, to the defendant Francis A. Fales for $35,000, subject only to two mortgages, one for $25,000 and the other for $15,000; whereupon it alleged the title of said real estate became vested in Francis A. Fales free from any lien under the mortgage in suit.

It was also alleged that the indebtedness of the old firm of McDonnell, Kline & Co. had been renewed or extended by the succeeding firms to the amount of $110,000, and that at no time after August, 1880, was the interest of either partner in such partnership property worth anything over and above the payment of the partnership debts.

The relief asked for was "that the title conveyed to said Fales be declared superior and prior to any lien or claim of the plaintiff under the mortgage set out in the complaint    *    *    * and that said mortgage be removed from the record as a cloud upon the title of said Fales." It is not claimed that the facts set forth in this count constituted any defense to the mortgage so far as Clark, the mortgagor, is concerned, but the contention is that the defendant Fales, by his deed from the assignees, has acquired some other interest, which gives him an equitable defense to the mortgage.

It will be observed that no claim is made that any covenants in McDonnell's deed to Clark have been broken, or that in fact there were any such covenants; and it conclusively appears in the case that Clark received, through McDonnell's deed, all of the property bargained for and the precise consideration for the obligation executed by him, which he contracted for. It also appeared that he then covenanted with McDonnell to pay all of the existing debts of the firm, the alleged continued existence of which now forms the sole foundation of the appellants' claim for relief. Thus the alleged equities, which are now invoked by the appellants to defeat the mortgage in suit, are precisely those which the mortgagor covenanted to extinguish, and subject to which covenant the appellants are now in possession of the property, claiming title thereto.

In view of the authorities heretofore cited, it is difficult to see how any legal or equitable defense to the mortgage in question is presented by this answer; but if any there was, it seems to have been entirely removed by the findings of the referee founded upon satisfactory evidence negativing the material allegations upon which they are founded. Thus the referee

finds that the original firm of McDonnell, Kline & Co. was solvent at the time of the death of John McDonnell, as was also the second firm of the same name, at the time of the sale to Clark. He also finds that there was no proof that any of the debts of the old firm of McDonnell, Kline & Co. were outstanding, as existing claims against it, at the time the mortgage in suit was given, and he negatives the allegation that Lucy McDonnell ever held the legal title to any part of the real estate in question, or that Edward McDonnell ever assumed payment of any firm debts, but finds that upon John McDonnell's death the real estate descended to his heirs-at-law, and was sold by virtue of the surrogate's order for the payment of his debts, and was purchased on such sale by one O'Bryan, who conveyed it to Edward McDonnell. He further finds that the property in question was sold by the assignees to the defendant Fales, in March, 1884, subject to all liens and incumbrances. These findings are fully supported by the evidence in the case and seem to dispose of the assumed equities upon which the appellants base their argument for a reversal of the judgment.

There is no question made but that Edward McDonnell had the legal title to the property mortgaged at the time of his conveyance to Clark, and a consequent interest therein capable of being transferred by deed (*Bliss* v. *Cottle*, 32 Barb. 322; *Wilson* v. *Wilson*, 20 How. Pr. 41; *Fairchild* v. *Fairchild*, 64 N. Y. 471), and there is just as little question but that such interest furnished a sufficient consideration for the bond given back, for the purchase-money and the mortgage executed to secure its payment. This mortgage was a valid and subsisting lien at the time of the conveyance to Fales upon the property described in it, for the sum therein mentioned, even though its object was liable thereafter, to be defeated by the exhaustion of the fund through the enforcement of prior liens, whether legal or equitable, affecting the property conveyed. It follows, as a necessary consequence from these facts, that the defendant Fales, having acquired title to the property in question, subject to all liens and

incumbrances upon it, is not, and neither can his grantees be, at liberty to question the liability of the property mortgaged for the payment of the mortgage debt.   Even if it was in the power of the assignees, as representatives of creditors, to question the lien of this mortgage, they never did so, and they transferred no right to do so to their grantees; but by making the deed subject to exisiting liens and incumbrances, impliedly withdrew such right from them, and made their title depend upon the payment of the mortgage.   The transfer from the assignees to Fales conveyed simply an equity of redemption in the premises, and by the terms of their deed he took no greater interest in the property than such as remained after the extinguishment of the liens then resting upon it.   (*Eagle Fire Co.* v. *Lent*, 6 Paige, 635.)   The attempt of the appellants to clothe themselves with any supposed equities existing in favor of creditors, has, therefore, no foundation in the facts of the case, as there were no such equities existing, and even if there were, the defendants have not succeeded to them.

But a further answer to the contention of the defendants is found in the fact that there are no such creditors asserting claims which antedate the execution of the deed and mortgage in suit.   The debtor firms existing at that time, and previous thereto, were solvent, as found by the referee, at the date of McDonnell's deed, and the individual members of such firms had an interest in their assets, capable of being sold and conveyed, and of being made the subject of security for the payment of the purchase-price of the property.   In so far as those interests became contributions to the capital of subsequent firms, formed to carry on the same business, they could only be used for that purpose, subject to the liens already existing upon them, and the creditors of such firms could acquire no right to contest the validity of such liens, except such as belonged to the firm itself.

The attempted defense of the appellants is simply a claim that, at the time of McDonnell's deed to Clark, there were outstanding claims in favor of creditors, which might have been used in equity to extinguish McDonnell's legal title and

thus produce a failure of consideration for the mortgage. This defense is not sustainable either in law or equity, or by the facts of the case.

The judgments of the courts below should be affirmed, with costs against the appellants.

All concur.

Judgment affirmed.